UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNY RIVERA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Civ. No. 16-4106 (KM)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Ms. Jenny Rivera brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34 and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

### I. BACKGROUND

Ms. Rivera seeks to reverse a finding that she did not meet the Social Security Act's definition of disability from January 29, 2011 to February 27, 2014—the date of her fiftieth birthday. (R. 32).[1]

Rivera applied for DIB on September 15, 2011 and SSI on July 19, 2013. (R. 204-11). Rivera stated that she had been unable to work since January 29,

---

[1] Pages of the administrative record (ECF no. 5) are cited as "R. \_\_." The Brief in Support of Plaintiff (ECF no. 11) is cited as "Pl. Br." Plaintiff's Reply Brief (ECF no. 13) is cited as "Pl. Reply \_\_."

1

2011 because of multiple impairments. (R. 225, 228). The specific symptoms include pain resulting from a 2007 motor vehicle accident, anxiety, and depression. (R. 228). Rivera's application was denied by New Jersey Disability Determination Services on June 26, 2012, and on reconsideration on April 11, 2013. (R. 106-35).

On August 15, 2014, Rivera appeared with counsel, Agnes Wladyka, at a hearing before Administrative Law Judge ("ALJ") Richard West. (R. 43-87). Mary Anderson, a vocational expert, testified. (R. 82-87). On March 4, 2015, the ALJ issued a decision finding that Jenny Rivera was not disabled from January 29, 2011 to February 27, 2014, when she attained the age of 50. (R. 25-32). However, the ALJ determined, by application of Medical-Vocational Guidelines ("GRIDS"), that Rivera has been disabled since February 28, 2014. (R. 32). The GRIDS are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. pt. 404, subpt. P, app.2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* When Rivera turned fifty on February 28, 2014, her age classification changed, and the GRIDS labeled her presumptively unable to perform work found in significant numbers in the national economy. (R. 32).

On May 11, 2015, the Appeals Council denied Rivera's request for review (R. 1-5), rendering the ALJ's decision the final decision of the Commissioner. Rivera then appealed to this Court, challenging the ALJ's determination that she was not disabled from January 29, 2011 to February 27, 2014.

**II. DISCUSSION**

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v.*

2

*Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

3

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the

4

five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ West properly followed the five-step process in determining that Rivera was not disabled from January 29, 2011 to February 27, 2014. His findings may be summarized as follows:

**Step One:** At step one, the ALJ determined that Rivera had not engaged in substantial gainful activity in the relevant period. (R. 27). Rivera stopped working in 2011 and started receiving unemployment benefits. (R. 27).

**Step Two:** At step two, the ALJ determined that Rivera had the following severe impairments: disorder of the spine, depression, and anxiety. (R. 27-28).

**Step Three:** At step three, the ALJ found that, from January 29, 2011 to February 27, 2014, Rivera did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1 (R. 28).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Rivera has the following RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she cannot climb ladders, ropes or scaffolds, and can perform other postural functions occasionally; she can understand, remember and carry out simple instructions; she can have occasional interaction with the general public; and she can handle changes to essential job functions on an occasional basis.

(R. 28). The ALJ found that Rivera's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but found that

"[her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible ...." (R. 29).

The ALJ also determined that Rivera could not perform her past work as a cargo agent (Dictionary of Occupational Titles ("DOT")# 248.367-018). (R. 30). The demands of this job exceed her residual functional capacity. (R. 30).

**Step Five:** At step five, the ALJ considered Rivera's age, education, work experience, and RFC, as well as the GRIDS. (R. 30-32). The ALJ determined that Rivera was able to perform other jobs existing in significant numbers in the national economy from January 29, 2011 to February 27, 2014. (R. 30-32). Relying on the testimony of VE Mary Anderson, the ALJ identified several representative jobs that Rivera could have performed in that period despite her limitations: (1) document preparer (DOT# 249.587-018); address clerk (DOT# 209.587-010); and eyeglass frame polisher (DOT# 713.684-038). According to the VE, there are over 2,800,000 such jobs nationally. (R. 31).

Nonetheless, when applying the GRIDS, ALJ West found that Rivera has met the qualifications for disability since February 28, 2014. (R. 32). Rivera's GRIDS age category changed on February 28, 2014—her fiftieth birthday. (R. 32). That age factor tipped the analysis. Along with her work experience, education, and RFC, an application of the GRIDS for her new age category led the ALJ to a direct finding of "disabled." (R. 32). Thus benefits were found to appropriate from February 28, 2014 on; the dispute here concerns Rivera's entitlement to benefits before that date.

### C. Analysis of Jenny Rivera's Appeal

Rivera challenges ALJ West's determination that she was not disabled from January 29, 2011 to February 27, 2014. She claims that the ALJ committed errors at steps three, four, and five. At step three, Rivera argues, she met the criteria for Listing 1.04 (Disorders of the spine) and Listing 12.04 (Depressive, bipolar and related disorders). (Pl. Br. 19-21).

At step four, Rivera asserts, the ALJ's RFC determination was not supported by substantial evidence. First, she claims the ALJ did not give

6

proper credence to her subjective complaints concerning her orthopedic impairments and mental impairments, which included statements of depression, anxiety, suicidal ideations, auditory hallucinations, and visual hallucinations. (Pl. Br. 18). Rather, he allegedly rejected these statements without making findings of why they were not credible. (Pl. Br. 25). Second, Rivera alleges that the ALJ violated SSR 96-8p by purportedly basing his opinion on one post-hearing consultative examination and failing to provide reasons for not adopting the opinions of Dr. Perdomo, Dr. Patel, and Dr. Rosa. (Pl. Br. 18-19). Rivera claims that the ALJ ignored evidence of nerve root compression (R. 329-43), an inability to ambulate effectively (R. 352-59), chronic back pain (R. 341-43, 360-64), and several mental impairments (R. 360-64, 370-71, 376-78, 384-87). (Pl. Br. 20-25).

At step five, she argues, the ALJ improperly portrayed her individual limitations when posing questions to the VE. Specifically, Rivera states that the ALJ did not mention her cane use, numbness in her fingers, and an inability to sit for prolonged periods of time. (Pl. Br. 29-30).

### 1. The ALJ's Step Three Evaluation

At step three, the ALJ determined that Rivera did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P., app. 1, pt. A. (R. 28). As noted previously, those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.

Rivera argues that the ALJ erred by not finding that she met the criteria for Listing 1.04 (Disorders of the spine) and Listing 12.04 (Depressive, bipolar and related disorders). (Pl. Br. 19-21). The ALJ found that Rivera did not meet Listing 1.04 (Disorders of the spine) because "[t]he medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis" and "there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)." (R. 28).

7

### a) Listing 1.04

Rivera claims that she meets Listing 1.04 (Disorders of the spine). She claims the ALJ erred by (1) not considering evidence of nerve root compression and (2) finding that she does not have the "inability to ambulate effectively."

First, Rivera has not produced evidence showing that she suffers from "nerve root compression" as defined in 1.04(A). She cites an October 19, 2011 general medical report which refers to a February 15, 2011 MRI showing herniated discs with "nerve root impingement." (Pl. Reply 2); (R. 341). However, Listing 1.04 requires a plaintiff to provide evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." The record does not demonstrate a case of nerve root compression as defined in Listing 1.04. Furthermore, an orthopedic examination by Dr. Fernando in 2014 reported no clinical evidence of disk abnormality or impingement on the nerves in the lumbar or cervical spine. (R. 29, 404-10).

Second, the definition of "inability to ambulate effectively" in 1.00(B)(2)(b) is defined generally as being unable to ambulate "without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities" (except in cases of amputation). In the medical record, Dr. Fernando emphasized that Rivera "does not require a cane to ambulate" (R. 405). Even if Rivera needed to use a cane, this would not require an assistive device that limited the functioning of both upper extremities (*e.g.,* one that occupied both hands).

### b) Listing 12.04

Rivera claims that she meets Listing 12.04 (Depressive, bipolar and related disorders). The ALJ found that Rivera did not satisfy the paragraph "C" criteria of Listing 12.04. Paragraph "C" requires that an individual "rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial

support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder." Rivera does not have medical evidence that she relies on such interventions. Without such evidence, the ALJ cannot find that her mental health condition meets the criteria in Listing 12.04.

## 2. The ALJ's Step Four Evaluation

At step four, Rivera asserts, the ALJ's RFC determination was not supported by substantial evidence. She argues (a) that the ALJ did not give proper credence to her subjective complaints and (b) that the ALJ violated SSR 96-8p by purportedly basing his opinion on one post-hearing consultative examination and failing to provide reasons for not adopting the opinions of the other doctors. I will discuss each of these arguments in turn.

### a) The ALJ's Credibility Determination

First, Rivera argues that the ALJ did not give proper credence to her subjective complaints concerning her orthopedic impairments and mental impairments, which included statements of depression, anxiety, suicidal ideations, auditory hallucinations, and visual hallucinations. (Pl. Br. 18). Rivera claims the ALJ rejected these statements without making findings of why they were not credible. (Pl. Br. 25).

An ALJ may reject or only partially credit subjective complaints if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Nonetheless, the ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." SSR 96–7p; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). In this case, the ALJ did what was required by articulating specific reasons for his credibility findings that were supported by the evidence in the record.

SSR 96–7p provides that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." *Id.* The regulation then prescribes a two-step process for evaluating a claimant's statements about her own physical or mental impairments. Such

9

statements, by themselves, are insufficient to establish the existence of an impairment or disability. *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96–7P (S.S.A. July 2, 1996). Instead, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

At the first step of the credibility-determination process, the ALJ determined that Rivera's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 29). However, at the second step, he found that Rivera's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 29).

The ALJ considered several medical reports concerning Rivera's orthopedic impairments when deciding not to fully credit her statements. Specifically, Dr. Rosa referred only to problems with prolonged standing, but not sitting. (R. 29, 330, 333). The ALJ also considered Dr. Fernando's report, which found that Rivera had the RFC to "sit, stand and walk a total of six hours in an eight hour workday for a total of three hours at one time without interruption." (R. 29, 405). Additionally, the ALJ noted that the post-hearing orthopedic consultative examination does not support the allegation that Rivera could not perform seated work. (R. 30).

ALJ West examined several pieces of evidence when considering whether to credit Rivera's reports of mental health symptoms. He noted that Dr. Perdomo and Dr. Gomez-Rivera both assessed Rivera as having a Global

10

Assessment of Functioning (GAF) of 50, which suggests moderate-to-severe symptoms in school, social, and occupational functioning. (R. 30). The ALJ accordingly reduced the range of sedentary work that Rivera could perform. (R. 30). The ALJ also considered that the mental health treatment with Dr. Gomez-Rivera was conservative (i.e., medication and monthly psychotherapy) and Rivera had not had any hospital visits or crises. (R. 30). Thus, the ALJ credited some of Rivera's mental health symptoms according to the evidence presented, but did not credit all of Rivera's reported symptoms.

What is required overall is that the ALJ give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determination. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011); *see also* 20 C.F.R. § 404.1529(a). In this case, the ALJ appropriately evaluated Rivera's subjective testimony given the medical record.

### b) The ALJ's Consideration of Medical Evidence

Second, Rivera claims that the ALJ relied on one post-hearing consultative examination and failed to provide reasons for not adopting the opinions of Dr. Perdomo, Dr. Patel, and Dr. Rosa. (Pl. Br. 18-19). Rivera claims that the ALJ ignored evidence of nerve root compression (R. 329-43), an inability to ambulate effectively (R. 352-59), chronic back pain (R. 341-43, 360-64), and several mental impairments (R. 360-64, 370-71, 376-78, 384-87). (Pl. Br. 20-25).

ALJ West considered several pieces of evidence regarding reports of nerve root compression, an inability to ambulate effectively, and chronic back pain. (R. 29). The ALJ noted that an orthopedic exam by Dr. Fernando reported no clinical evidence of disk abnormality or impingement on the nerves in the lumbar or cervical spine. (R. 29). Dr. Fernando also found that Rivera could sit, stand, and walk for a total of six hours in an eight hour workday for a total of

11

three hours at a time without interruption. (R. 29). The ALJ used this report to find that Rivera is limited to sedentary work. (R. 29).

The ALJ also evaluated the medical record considering Rivera's mental health. (R. 30). As noted above, Dr. Gomez-Rivera prescribed a conservative treatment plan, GAF testing from Dr. Gomez-Rivera and Dr. Perdomo showed moderate-to-severe symptoms, and Rivera had no history hospital visits or crises as a result of her mental health. (R. 30).

Rivera argues that the ALJ did not consider the opinions of Dr. Perdomo, Dr. Patel, and Dr. Rosa, and did not make specific findings as to why these opinions were not adopted. (Pl. Br. 18-19). However, the ALJ noted that Dr. Rosa's prescribed treatment plan was minimal and conservative. (R. 29). He considered this when making his RFC determination. (R. 29-30). The ALJ also referred to Dr. Perdomo's psychological evaluation and accordingly reduced her range of sedentary work. (R. 29-30). Dr. Patel's reports do not provide evidence that Rivera has significant limitations due to her disabilities. Dr. Patel's 2012 report states that Rivera has no gross neurologic deficit and there was no localized tenderness or any deformity in her cervical or lumbosacral area. (R. 354-55). A 2013 report from Dr. Patel is similar; it also notes that Rivera can walk at a reasonable pace with a hand-held assistive device. (R. 380-83).

Rivera claims that the ALJ violated SSR 96-8p by "failing to provide reasons for not adopting the opinions of Drs. Perdomo, Patel, and Rosa that would preclude Ms[.] Rivera from sedentary work." (Pl. Br. 19). SSR 96-8p actually provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96–8P (S.S.A. July 2, 1996). First, Dr. Patel's opinion does not conflict the ALJ's RFC determination. Dr. Patel found that Rivera was capable of sedentary work. (R. 353-56, 380-83). Second, in accordance with SSR 96-8p, the ALJ explained why he did not fully credit the opinions of Dr. Rosa and Dr. Perdomo: the consultative examinations were

more comprehensive and reported contrary findings; the post-hearing orthopedic consultative examination found that Rivera could perform sedentary work; Dr. Gomez-Rivera's treatment plan was conservative; Rivera did not have any hospital visits or crises regarding her mental health; and Rivera's testimony suggests that she performs sedentary work and simple activities of daily living. (R. 30).

Ultimately, the ALJ had substantial evidence for his RFC determination. He considered the medical reports and gave specific reasons why he did not fully credit certain medical opinions that conflicted with consultative examinations. Given the standard of review, I must uphold the ALJ's findings at step four.

### 3. The ALJ's Step Five Evaluation

At step five, the ALJ determined, based on the testimony of VE Mary Anderson, that Rivera was able to perform jobs existing in significant numbers in the national economy from January 29, 2011 to February 27, 2014. (R. 30-32). Rivera alleges that the ALJ erred when posing questions to the VE. Specifically, Rivera argues that the ALJ did not mention her cane use, numbness in her fingers, and an inability to sit for prolonged periods of time. (Pl. Br. 29-30).

First, the ALJ stated Rivera's RFC to VE Mary Anderson, which limited Rivera to sedentary work with additional restrictions. (R. 83). Second, the ALJ constructed hypotheticals that referred to Rivera's ambulatory limitations. (R. 84). For instance, the ALJ's second hypothetical asked about an individual who could work only "at sedentary" and "would be able to perform only sedentary exertional positions." (R. 84-85). Otherwise, Rivera's argument about the hypotheticals appears to be another guise for her attack on the RFC determination, which, for the reasons stated above, is supported by substantial evidence.

13

### III.  CONCLUSION

For the foregoing reasons, Ms. Jenny Rivera has failed to demonstrate that the ALJ's decision, which found that she was not disabled from January 29, 2011 to February 27, 2014, was not supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Rivera's claims for DIB and SSI for that time period. The ALJ's decision is therefore AFFIRMED. The ALJ's determination that Rivera has been disabled since February 28, 2014, is undisturbed by this opinion.

An appropriate order accompanies this opinion.

Dated: October 13, 2017

                                                                                             *[signature]*
                                                                                        **KEVIN MCNULTY**
                                                                                        **United States District Judge**

14